PUERTO RICO HOUSING AUTHORITY, Plaintiff and Appellee,
v. CARMELO J. COLÓN ET AL., ETC., Defendants; CAR-
MELO J., RAFAEL and AMADO COLÓN, Appellants.

No. 10380. Argued November 5, 1951.—Decided March 13, 1952.

*Arturo Ortiz Toro* for appellants. *Rafael B. Pérez Mercado* for appellee.

MR. JUSTICE MARRERO delivered the opinion of this Court.

This case was removed from the extinct District Court of Arecibo, where it was originally filed, to the Court of Eminent Domain of Puerto Rico which, after a protracted trial on its merits, entered judgment granting the complaint, decreeing the definitive condemnation of the property in question, fixing the amount of $37,000 as the just value thereof and ordering the plaintiff, Puerto Rico Housing Authority, to pay to the defendants the amount of $22,171.75,[1]

---

[1] The sum of $14,828.25 was attached to the Declaration of Taking and Delivery presented on the day following the filing of the complaint, as just and reasonable compensation for the property.

plus legal interest from the date of acquisition until payment in full of said amount, and that $1,297.07 be delivered to the Treasurer of Puerto Rico in payment of the delinquent taxes.

Feeling aggrieved, the defendants appealed. They contend now that the Court of Eminent Domain erred: (1) in not rendering judgment setting aside its order of October 20, 1944, and in not restoring defendant's title to the property to be condemned; (2) in not admitting questions as to the price of lots in 1935 and 1944; in not permitting Arturo Márquez, a witness, to give his opinion about the condemned property as an extension for urbanizing purposes; in not letting him testify as to the value of one cuerda in 1944; in not permitting evidence of verbal sales of lots to different persons; in not permitting questions as to whether anyone wished to buy lots from the defendants in 1944; in not admitting evidence of the price at which land in the municipal cemetery was being sold; in not taking into consideration Buxeda's testimony; in refusing to admit evidence and in refusing to grant the inspection requested; (3) in the weighing of the evidence; (4) in fixing the value of the condemned property at $37,000; (5) in deciding that the latter had an area of 63.78 cuerdas; and (6) in not ordering plaintiff to pay the costs and attorney's fees. We shall discuss these errors in the order they were assigned by the appellants.

██ With respect to the first assignment it will suffice to say that as we held in *Housing Authority* v. *Sagastivelza*, 72 P.R.R. 224, under § 7 of the Condemnation Act of 1903 (Sess. Laws, p. 50), the right of reversion of the condemned property arose only six months after the date of the final judgment in the condemnation suit; that such final judgment has not yet been rendered in the instant case; that, on the other hand, said Section was expressly repealed by § 3 of Act No. 105 of May 7, 1948 (Sess. Laws, pp. 240, 246), and that at the present time, pursuant to the provisions of § 1 of Act No. 441 of May 14, 1947 (Sess. Laws, p. 920), as amended by

Act No. 375 of May 14, 1949 (Sess. Laws, p. 1148), the only right of "all natural or artificial persons against whom condemnation proceedings were prosecuted by... agencies, or instrumentalities" is the "preferential right to reacquire possession of and title to said properties whenever The People of Puerto Rico or the department, agency, or instrumentality thereof which has the title to said property registered in its name, decides to alienate, in whole or in part, the properties condemned; ..." The first error assigned was, therefore, not committed.

Nor the second. Besides the fact that remote sales of lots were involved, the property to be condemned has over 60 cuerdas, and is not in the least similar in area, topography and location to the lots about which the witness was questioned. See *People* v. *Heirs of Rabell*, 72 P.R.R. 536, *People* v. *Carmona*, 70 P.R.R. 292; *People* v. *Huyke*, 70 P.R.R. 720. Moreover, Arturo S. Márquez, the witness to whom the questions were posed, was only a mechanical engineer who had a property of about 46 or 47 cuerdas in Arecibo. The evidence did not show; however, that he was qualified to testify on the particulars about which he was being examined.

The verbal sales to José A. Agostini and Héctor Gandía were never carried out and, therefore the evidence offered was equivalent to evidence of mere offers. Such evidence being uncertain and speculative was inadmissible. *People* v. *Heirs of Rabell, supra.* The defendants themselves admitted that evidence of offers was not admissible. (T. E., p. 199.)

Evidence as to the price at which land in the municipal cemetery was being sold was also clearly inadmissible inasmuch as it entered the area of speculation and conjecture. *People* v. *Cementerio Buxeda*, 72 P.R.R. 307, 309; *People* v. *Huyke, supra.*

Witness Raúl Buxeda testified that if 10 cuerdas of the

212

total area of the condemned property were devoted to cemetery, they would be worth at least $200,000, and that at the rate of $25 per square meter which is, according to him, the minimum that is charged in similar sales in cities like Arecibo, an amount up to $500,000 could be obtained. He elaborated his considerations on this point and the court finally declared that that was too speculative. We agree, for just as we held in *People* v. *Cementerio Buxeda, supra,* this likewise invaded the area of speculation and conjecture.

 Upon being requested to inspect the premises, the court stated that if it did "we would practically be going to see something which we already know," and that "furthermore, the judge has such a clear picture of the evidence in his mind that he deems it unnecessary to go to the place again in order to complete the picture." In this connection we shall say that the granting of an inspection always rests in the sound discretion of the trial judge and that under the circumstances set forth it can not be concluded that he abused said discretion. *Housing Authority* v. *Sagastivelza,* 72 P.R.R. 262, 271.

██ In the second assignment the defendants charge also that the trial court committed innumerable errors in refusing to permit certain witnesses to testify regarding sales of lots in other urbanizations; with respect to the demand of lots facing the road; as to whether there were persons interested in buying lots prior to 1944 and in connection with some questions asked to certain witnesses. It is unnecessary to discuss them specifically. For the foregoing reasons that evidence was inadmissible and, on the other hand, the witnesses to whom the questions were directed had not duly qualified to testify on the matters about which they were being questioned.

██ The third and fourth assignments may be discussed jointly. The evidence before the court was truly abundant. Defendants' evidence fixed a value to the property which,

according to some of the witnesses, reached $500,000. On the other hand, one of plaintiff's witnesses set a value of $14,828.25 to the property. Another said that it would not be financially advantageous or feasible to urbanize the property; that he did not consider it suitable for urbanizing and that if the Authority intended to devote it to such ends it was because the government could do many things which were not financially feasible or advantageous to a private citizen.

The court stated often that undoubtedly one of the things which could affect the market value of a piece of property was the reasonable and probable use to which it could be devoted. It, therefore, took into consideration the fact that said property could possibly be urbanized as well as planted with sugar cane or profitably devoted to a dairy. In the course of its opinion, after summing up the evidence and setting forth that it considered all the evidence admitted, the court declared that in its judgment the fair and reasonable market value of the entire condemned property in October 1944, was $37,000. We do not think that said finding is devoid of evidence. On the contrary we believe that there is sufficient evidence in the record to support it. We must, consequently, respect it. *People* v. *Soc. Agríc. Mario Mercado e Hijos*, 72 P.R.R. 740; *Housing Authority* v. *Viera*, 72 P.R.R. 683; *People* v. *Lamboglia*, 70 P.R.R. 773; *People* v. *Carmona, supra; People* v. *Huyke, supra*.

■ The Court of Eminent Domain did not err either in deciding that the condemned property had an area of 63.78 cuerdas. A perusal of the record discloses that the property is described in the complaint as having that same area; that the witnesses repeatedly testified that such was the area of the property (see pp. 93, 165 and 381 of the T. E.) ; that in the letter addressed on September 1, 1948, by counsel for the Authority to the Registrar of Property of Arecibo requesting a certified copy of the record of the property, the latter is

described as having 63.78 cuerdas and that in the certificate issued at the request of the Authority the Registrar specifically states that in the first entry of the property it is described "as the property in the preceding petition is described." Based on that evidence the court was able to conclude that such was the area of the property. Be it as it may, it appears from the record (T. E., p. 364) that it was precisely counsel for the defendants who told the court that "certainly, the only question under discussion was that if the number of cuerdas was less, we stipulated, according to the ruling of the court, that both parties would agree to have the engineers rectify or ratify the survey." Nevertheless, it does not appear from the record that such rectification or ratification was subsequently made. Hence, it can not be concluded that the lower court erred in referring to the property as having that area.

In its judgment the Court of Eminent Domain did not award costs or attorney's fees. The defendants aver that plaintiff should have been ordered to pay both. It will be enough to say that although pursuant to Act No. 94 of 1937, (Sess. Laws, p. 229) courts must allow costs to the party in whose favor any final judgment or resolution is rendered, however, in the case at bar it cannot be contended that the judgment was entirely in favor of the defendants. Unquestionably the condemnation of the property was decreed in plaintiff's favor. In that regard judgment was in its favor. Although it was alleged in the complaint that the reasonable and fair value of the property was $14,828.25 and the court concludes in its judgment that such value was $37,000, and ordered the plaintiff to pay to the defendants the difference, to wit, $22,171.75, with interest, the judgment was not thereby entirely in favor of the defendants. The fact is that judgment was rendered partly in favor of the plaintiff and partly in favor of the defendants. Under these circumstances the court did not err in not ordering the former to

pay the costs. See also Act No. 96 of May 9, 1947 (Sess. Laws, p. 224), and the Per Curiam opinion of August 4, 1950, delivered in case No. 10,086, *Atiles* v. *Fernando Amador et al.*, for damages.

 Attorney's fees are granted to the prevailing party only when the losing party has acted rashly. On the one hand we have seen that in the case at bar there is really no losing party. And on the other we repeat, as we have often said, that the award of attorney's fees rests in the discretion of the trial court and that we shall not interfere with such discretion unless we are convinced that there has been an abuse thereof. Such is not the case here.

The judgment appealed from will be affirmed.